IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JIMMY RAY DARBY, ID # 314319, | ) | |
|    Plaintiff, | ) | |
| vs. | ) | No. 3:06-CV-1928-K(BH) |
| | ) | |
| DALLAS COUNTY SHERIFF, et al., | ) | |
|    Defendants. | ) | **Pretrial Management** |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the District Court's Special Order No. 3-251, this case was referred to this Court for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations to the District Court on dispositive motions. Before the Court is *Dallas County Sheriff Lupe Valdez's Motion to Dismiss Under* FED. R. CIV. P. *12(b) and Brief in Support*, filed December 21, 2006. Based on the filings and applicable law, this Court recommends that Defendant's motion be **GRANTED, in part,** and **DENIED, in part**.

I.  BACKGROUND

Plaintiff is an inmate currently incarcerated in the Allred Unit of the Texas Department of Criminal Justice-Institutional Division. On July 17, 2006, he filed the instant action under 42 U.S.C. § 1983 against the Dallas County Sheriff and Nurse Colin, a.k.a. Nurse Mary Doe. (*See* Compl. at 3).[1] He asserts claims of failure to implement proper rules, regulations, policies and procedures to accommodate his disability[2], failure to protect, and denial of proper medical care. (*Id.*) Plaintiff

---

[1] The Court notes that the first page of Plaintiff's complaint is numbered as "-2-" and the subsequent pages are numbered "-3-", "-4-", "-4a-", "-4b-", "5". The Court will refer to the pages of Plaintiff's complaint as numbered.

[2] Plaintiff states that he suffers from pain and "inability to bend, climb and otherwise due to a back injury." (*See* Compl. at 3).

claims that while he was incarcerated at the Dallas County jail on July 4, 2004, at approximately 8:00 a.m., he fell from the top bunk in his cell and suffered a broken left foot. (*See* Compl. at 3). After alerting security officers that he had fallen and sustained an injury, he was assisted to the Nurse's station by fellow inmates. (*See* Compl. at 4). Plaintiff contends that the nurse on duty, Nurse Colin, did not treat his injury, but instead advised that he would have to return at 11:00 a.m. and see the nurse who would be on duty then. *Id.* Plaintiff returned to the nurse's station at approximately 11:00 a.m., but Nurse Colin was still on duty, and she again refused to examine his injury. *Id.* Plaintiff states his injury was ultimately not treated until 5:00 p.m., on July 4, 2004, at which time his foot was wrapped, he was given ibuprofen, and his name was placed on a list to be seen by a doctor and taken to have an x-ray. *Id.* Plaintiff further states that his foot was not examined again until July 8, 2004, only because his family intervened and placed a call to a doctor at Parkland Hospital on his behalf. (*See* Compl. at 4a). Plaintiff states that x-rays taken at Parkland revealed a fracture to his left foot. He was given Tylenol #3, a hard sole shoe, crutches to assist with his mobility, and a follow-up appointment with an orthopedic doctor on July 16, 2004. (*Id.*).

Plaintiff alleges that Defendant Dallas County Sheriff prevented him from receiving the recommended follow-up evaluation by an orthopedic doctor. *Id.* Plaintiff suggests the Dallas County Sheriff acted to remove him from county jail in order to limit the extent of his liability for plaintiff's injury and to prevent plaintiff from learning about the nature and severity of his injury from the orthopedic specialist. Due to the improper medical treatment, indifference to his medical needs, failure to protect and failure to accommodate his disability, Plaintiff alleges he suffers from permanent injury and damage. (*See* Compl. at 4a.). Plaintiff seeks compensatory damages for his injuries as well as punitive damages and any other monetary relief to which he may be entitled. (*See*

Compl. at 4b).

Defendant Dallas County Sheriff Lupe Valdez ("Defendant Valdez") filed an answer on December 21, 2006. *See* Doc. No. 14, (3:06cv1928-K) (N.D. Tex. Dec. 21, 2006).[3] Defendant Valdez also filed a motion to dismiss pursuant to rule 12(b)(1) and (6) on the grounds that Plaintiff failed to exhaust administrative remedies; his claims are barred by the applicable statute of limitations; and she is protected from individual liability by qualified immunity. *See* Dallas County Sheriff Lupe Valdez's Motion to Dismiss & Brief in Support at 3-4. Plaintiff has filed a response to which Defendant Valdez replied, and the issues are now ripe for decision.

## II. RULE 12(b)(1) MOTION

Defendant Valdez moves to dismiss Plaintiff's complaint under both Rule 12(b)(1) and Rule 12(b)(6) but does not clarify which grounds are asserted under Rule 12(b)(1) versus Rule 12(b)(6). *See* Dallas County Sheriff Lupe Valdez's Motion to Dismiss & Brief in Support at 2-4. The Court will first consider whether any of these grounds can be resolved through a motion to dismiss under Rule 12(b)(1).

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United*

---

[3] The docket sheet reflects that the summons as to Defendant Nurse Colin a.k.a. Nurse Mary Doe was returned unexecuted because she was "no longer employed by DCJ" and left no forwarding address. *See* Doc. No. 13, (3:06cv1928-K) (N.D. Tex. Dec. 14, 2006).

3

*States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). Considering rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* When the court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

The Fifth Circuit recognizes a distinction between a "facial attack" and a "factual attack" upon a complaint's subject matter jurisdiction. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F.Supp. 876, 878 (N.D. Tex. 1998). "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Id.* (citation omitted). If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Regardless of the attack, "[t]he plaintiff constantly bears the burden of proof that jurisdiction does exist." *Rodriguez*, 992 F.Supp. at 879 ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.") (citations omitted).

Defendant Valdez first argues that Plaintiff failed to comply with the PLRA's mandatory exhaustion requirement. *See* Dallas County Sheriff Lupe Valdez's Motion to Dismiss & Brief in Support at 3 (citing 42 U.S.C. § 1997e(a)). Although the appropriate mechanism for resolving nonexhaustion under the PLRA is not settled, *McCoy v. Goord*, 255 F.Supp.2d 233, 249 (S.D. N.Y. 2003), the Fifth Circuit has held that exhaustion of administrative remedies pursuant to § 1997e is not a jurisdictional requirement, *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998). Federal

4

courts have noted when "failure to exhaust administrative remedies is apparent from the face of the complaint . . . a Rule 12(b)(6) motion is the proper vehicle." *See McCoy v. Goord,* 255 F.Supp. at 249; *see also Jones v. Bock*, 127 S.Ct. 910, 921 (2007) (noting that failure to exhaust can be a basis for dismissal for failure to state a claim). Thus, a motion to dismiss for nonexhaustion should not be brought pursuant to Rule 12(b)(1).

A motion to dismiss under Rule 12(b)(1) on grounds of a limitations bar is also improper. The Fifth Circuit has held that a statute of limitations is not a jurisdictional bar, and thus, a motion to dismiss should be brought under Rule 12(b)(6) not Rule 12(b)(1). *See Triplett v. Heckler*, 767 F.2d 210, 211-12 (5th Cir. 1985).

Finally, a motion under Rule 12(b)(1) is not the proper vehicle to assert dismissal on grounds of qualified immunity. *See* Dallas County Sheriff Lupe Valdez's Motion to Dismiss & Brief in Support at 2, 4. The Fifth Circuit has held that the defense of qualified immunity should be analyzed under a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment. *See Baker*, 75 F.3d at 197. Accordingly, because the Court cannot resolve any of the grounds asserted by Defendant Valdez in a Rule 12(b)(1) motion, her motion to dismiss under Rule 12(b)(1) should be **DENIED**.

### III. RULE 12(b)(6) MOTION

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges a complaint on the basis that it fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) motions to dismiss are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Spivey v.*


*Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). However, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-plead facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-plead facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. A court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "The court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam).

**A.**     *Exhaustion*

Defendant Valdez first argues that Plaintiff's claims should be dismissed because they are barred due to his failure to demonstrate exhaustion of administrative remedies. *See* Dallas County Sheriff Lupe Valdez's Motion to Dismiss and Brief in Support at 3. A prisoner's failure to exhaust administrative remedies is an affirmative defense that the defendant must plead and prove. *See Jones v. Bock*, 127 S.Ct. 910, 921 (2007); *see also* FED. R. CIV. P. 12(b).

Section 1997e(a) of Title 42 of the United States Code, as amended by the Prison Litigation

Reform Act of 1996 (PLRA), provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion under the PLRA is mandatory, and the requirement is strictly construed. *See Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003). The Court does not "inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness;" prisoners simply "must exhaust such administrative remedies as are available, whatever they may be." *Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir. 2003) (citations and internal quotation marks omitted), *cert. denied*, 541 U.S. 1012 (2004). Exhaustion is a prerequisite to suit even when the prisoner seeks relief not available in grievance proceedings such as money damages. *See Booth v. Churner*, 532 U.S. 731, 740-41 (2001).

Defendant Valdez argues that Plaintiff did not exhaust his administrative remedies by filing a grievance with the Dallas County Sheriff's Department prior to filing suit. *See* Dallas County Sheriff Lupe Valdez's Motion to Dismiss and Brief in Support at 3. To exhaust in accordance with § 1997e(a), a prisoner in the Dallas County Jail must pursue his administrative remedies under the two-step grievance procedure applicable in that facility.

> The first step requires the prisoner to submit a grievance to any staff member. After noting the date and time the grievance is received, the staff member will forward the grievance to the on-duty shift supervisor, who will in turn forward it to the Grievance Board for review. After review and an investigation, if necessary, the Grievance Board will issue a written decision. Upon receiving the written decision, the inmate

> will have five days to submit a written appeal to the Inmate Grievance Appeal Board. The Appeal Board will review all documents submitted in connection with the appeal and issue a decision, which may be reviewed by the Sheriff.

*See Medrano v. Dallas County Jail Med. Staff*, No. 3:04-CV-1913-M, 2005 WL 106573, at *2 (N.D. Tex. Jan. 18, 2005) (findings, conclusions, and recommendation citing *Burnett v. Robertson*, No. 3-01-CV-1284-P, 2001 WL 1577495, at *2 (N.D. Tex. 2001)), *accepted as modified by* 2005 WL 877925 (N.D. Tex. Apr. 14, 2005).

In this instance, Plaintiff pleads in his section 1983 complaint that he "attempted to execute administrative grievance process by writing formal letter setting forth my concerns and complaints which Dallas County Sheriff and subordinate officials were disregarding and indifferent failing to otherwise take action and/or respond." (*See* Compl. at 3). Some federal courts have held that "where a prisoner has made a 'reasonable attempt' to file a grievance, and prison officials have prevented the prisoner from filing that grievance, the grievance procedures are not 'available'", and thus the PRLA does not preclude the prisoner from suing in federal court. *Thomas v. New York State Dep't of Correctional Servs.*, No. 00 CIV. 7163 (NRB), 2002 WL 31164546, at *3 (S.D. N.Y. Sept. 30, 2002. The United States Supreme Court has held that "inmates are not required to specially plead or demonstrate exhaustion in their complaints. *Jones*, 127 S.Ct. at 921; *see also Weaver v. Vonda*, No. 06-41110, 2007 WL 1010466, at *1 (5th Cir. Mar. 28, 2007).

In support of her motion to dismiss, Defendant Valdez offers the affidavit of Leslie Sweet who avers that she has reviewed Plaintiff's jail records and has not found any grievances that were filed by Plaintiff while he was incarcerated at the Dallas County Jail. *See* Dallas County Sheriff Lupe Valdez's Motion to Dismiss and Brief in Support at Ex. A. The Fifth Circuit has stated "[d]ismissal under § 1997e is made on the pleadings without proof. As long as the plaintiff has alleged

8

exhaustion with sufficient specificity, lack of admissible evidence in the record does not form a basis for dismissal." *Underwood*, 151 F.3d at 296. Further, a motion to dismiss under rule 12(b)(6) is also resolved based solely on the face of the pleadings. *Baker*, 75 F.3d at 196. The Court will not therefore consider the affidavit of Leslie Sweet in determining the issue of exhaustion.

In his response, Plaintiff counters that after he learned of the permanent damage to his foot and the resulting lifetime of pain, he attempted to exhaust administrative remedies by writing a letter to the Dallas County Sheriff dated November 8, 2004. *See* Plaintiff's Response at 11. He states that when he received no response, he followed up with a subsequent letter dated December 10, 2004, inquiring about the status and disposition of his "grievance" to which again he received no reply. *Id.* He further states that the prison unit mail logs will confirm the letters he mailed to the Dallas County Sheriff as an attempt to exhaust administrative remedies. *See* Plaintiff's Response at 12. Because these facts are also outside the Plaintiff's initial complaint, the Court cannot resolve the issue of failure to exhaust in this rule 12(b)(6) proceeding.

Defendant Valdez has not shown that the face of the complaint requires dismissal for failure to exhaust available administrative remedies. Accordingly, Defendant's motion to dismiss on the ground that Plaintiff failed to exhaust administrative remedies should be **DENIED**.

B.  *Statute of Limitations*

Defendant Valdez next argues that Plaintiff's claims are barred by the applicable statute of limitations. *See* Dallas County Sheriff Lupe Valdez's Motion to Dismiss & Brief in Support at 3.

Plaintiff has brought this action pursuant to 42 U.S.C. § 1983. (*See* Compl. at 3). That statute "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas*

9

*v. Bradshaw,* 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* The alleged acts upon which the instant litigation is based occurred on or about July 4, 2004, July 8, 2004, and July 16, 2004. (*See* Compl. at 3, 4, 4a). The delay between the dates of the alleged acts and omissions and the date plaintiff filed the instant action, July 12, 2006,[4] prompts consideration of the timeliness of the instant action.

"The statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir.), *cert. denied*, 534 U.S. 820 (2001). In view of Texas' two-year statute of limitations for personal injury claims, TEX. CIV. PRAC. & REM. CODE § 16.003, plaintiff "had two years to file suit from the date" that his § 1983 claims accrued. *Id.*; *see also, Hatchet v. Nettles*, 201 F.3d 651, 653 (5th Cir. 2000). Having filed this action on July 12, 2006, Plaintiff's claims would have had to accrue within two years of this date, *i.e.* July 12, 2004 to be actionable.

Accrual of a § 1983 claim is governed by federal law:

> Under federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.' A plaintiff's awareness encompasses two elements: '(1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions.' A plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim. Actual knowledge is not required 'if the circumstances would lead a reasonable person to investigate further.'

*Piotrowski*, 237 F.3d at 576 (citations omitted). In other words, "[t]he cause of action accrues, so that the statutory period begins to run, when the plaintiff knows or has reason to know of the injury

---

[4] Although the district clerk docketed Plaintiff's complaint on July 17, 2006, Plaintiff signed it on July 12, 2006, and the Court will deem it filed on the earlier date. *See Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1988) (holding an inmate's *pro se* pleading is deemed filed when delivered to prison authorities for mailing).

10

which is the basis of the action." *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998).

In this instance, some of plaintiff's claims fall outside the applicable statute of limitation. Plaintiff's complaint establishes that he knew the facts that form the basis for his claims on July 4, 2004, July 8, 2004 and July 16, 2004 when the alleged acts and omissions allegedly occurred. He argues that although his injury occurred on July 4, 2004, he "did not learn of the irreparable and permanent injury resulting from the indifference and disregard caused by the lengthy delay, as well as the subsequent transfer to TDCJ-CID which the Defendant Lupe Valdez now seeks to capitalize upon where factors beyond the Plaintiff's control has prevented the timely processing and filing of legal papers due to a service not being readily available by TDCJ-CID." *See* Plaintiff's Response at 13-14.

While Plaintiff may have been unaware of the full extent of his injury on July 4, 2004, that is the date he was aware of an injury and the date the limitations period began to accrue. *See Tarpley v. Texaco, Inc.*, No. 3:96-CV-3209-R, 1998 WL 133122, at * 4 (N.D. Tex. Mar. 16, 1998). Equally, Plaintiff knew of the acts or omissions that resulted in the lack of follow-up treatment on July 8, 2004. However, plaintiff did not file the instant suit until more than two years later, on July 12, 2006. It thus appears that his § 1983 claims pertaining to violations occurring on July 4, 2004 and July 8, 2006 are time-barred.

Although some of Plaintiff's claims appear to be time-barred, the applicable limitations period may be equitably tolled in appropriate circumstances. *See Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998). "Because the Texas statute of limitations is borrowed in § 1983 cases, Texas' equitable tolling principles also control." *Id.* "[W]hen state statutes of limitation are borrowed, state tolling principles are to be the 'primary guide' of the federal court. The federal court may disregard the state

11

tolling rule only if it is inconsistent with federal policy." *See FDIC v. Dawson*, 4 F.3d 1303, 1309 (5th Cir. 1993) (citations omitted).

Under Texas law, imprisonment is no longer a "disability that toll[s] the running of the limitations period." *Slack v. Carpenter*, 7 F.3d 418, 419 (5th Cir. 1993). Furthermore, Texas courts have not extended equitable tolling principles to *pro se* litigants for their ignorance of the law. In addition, nothing in federal law supports tolling the limitations period. Under federal law, neither ignorance of law nor lack of counsel qualifies a litigant for equitable tolling. *Felder v. Johnson*, 204 F.3d 168, 171-72 (5th Cir. 2000). Further, federal law requires that litigants diligently pursue their actions before equitable tolling becomes available. *See Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999). If not tolled, limitations generally continue "to run until the suit is commenced by the filing of the plaintiff's complaint in the clerk's office." *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998).

In this case, Plaintiff filed the instant action after the applicable statute of limitations had expired on two of his claims. He asserts that his delay in filing was due the fact that there was no notary public available to notarize his application to proceed *in forma pauperis* at the time he completed his original complaint on June 30, 2006. *See* Plaintiff's Response at 13. Plaintiff also explains that he was not provided with a statement of his inmate trust fund account until July 12, 2006, even though he submitted several requests daily between June 30, 2006 and July 7, 2006. *See id.* While Plaintiff's explanations may show a reason for a twelve-day delay from June 30, 2006 to July 12, 2006, he does not explain why he could not have filed this suit earlier and within the two year period of limitations. He does not show "due diligence in preserving his legal rights." *Felder v. Miles*, No. 1:06-CV-10, 2006 WL 3761971, at *2 (E.D. Tex. Dec. 21, 2006). Thus, there appears

to be no basis for equitable tolling under Texas or federal law. "[E]quity is not intended for those who sleep on their rights." *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989). The Court should therefore dismiss Plaintiff's claims that accrued on July 4 and 8, 2004, as untimely. Accordingly, Defendant Valdez's motion to dismiss on the grounds that Plaintiff's claims are barred by the statute of limitations should be **GRANTED** in part and **DENIED** in part.

C.  *Qualified Immunity*

Defendant Valdez also moves to dismiss Plaintiff's individual capacity claims on the grounds of qualified immunity. *See* Dallas County Sheriff Lupe Valdez's Motion to Dismiss and Brief in Support at 4. A public official performing a discretionary function enjoys qualified immunity in a civil action, provided the conduct alleged did not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is not merely a defense to liability but an immunity from suit. *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42 (1995). Qualified immunity protects government officials from individual liability for plaintiff's § 1983 claims. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998).

Plaintiff does not specify whether he sues the Dallas County Sheriff in an official or individual capacity. Federal courts look to the substance of Plaintiff's § 1983 claims to determine if a defendant is sued in an individual or official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Dillon v. Jefferson County Sheriff's Dep't*, 973 F.Supp. 628, 631 (E.D. Tex. 1997). In this case, Plaintiff's complaint does not name a specific person when complaining about the actions of the Dallas County Sheriff. (*See generally* Compl.). His designation of defendant as "Sheriff of Dallas County," leads to the conclusion his claims are brought in an official capacity only. *See* Compl. at

13

3); *see also Dillon*, 973 F.Supp. at 631. Further, Plaintiff repeatedly asserts that it was the failure to implement proper policies, customs and procedures that led to his injury. (*See* Comp. at 3-4b). These allegations indicate an official capacity suit. *See Kentucky*, 473 U.S. at 166 (noting that "in an official-capacity suit the governmental entity's 'policy or custom' must have played a part in the violation of federal law").

Finally, the current Sheriff of Dallas County, Lupe Valdez, did not take office until January 1, 2005. *See* Dallas County Sheriff Lupe Valdez's Motion to Dismiss & Brief in Support at 5. The acts and omissions plaintiff complains of in his § 1983 suit occurred while he was incarcerated in the Dallas County Jail between on or about July 4, 2004 through July 16, 2004. *See* Compl. at 3-4a. Since Defendant Valdez was not the Sheriff of Dallas County during the time of plaintiff's incarceration, she could not have individually acted to cause plaintiff's injuries. Accordingly, to the extent that Plaintiff alleges claims against the Dallas County Sheriff in an individual capacity, they should be dismissed.

## IV. RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that the District Court grant *Dallas County Sheriff Lupe Valdez's Motion to Dismiss Under FED. R. CIV. P. 12(b)* (Doc. # 16) and dismiss all of Plaintiff's claims that accrued prior to July 12, 2004 on the grounds that they are barred by limitations and all of Plaintiff's claims against Defendant Valdez in an individual capacity. The Court should deny the motion to dismiss on all other grounds.

**Signed this 24th day of May, 2007.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

14

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on plaintiff by mailing a copy to him. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

15